CLARK, C. J., concurring.
The defendant was indicted in the Court below for selling liquor without a license. The jury returned a special verdict in which they found that the defendant did not have a license to sell liquor. They further find that the testimony of the witnesses is true. James Eastep testified that he applied to the defendant for the purchase of a gallon of whiskey and was told by him that he could let him have a gallon for two dollars, express charges prepaid. The witness paid defendant two dollars, who gave him a receipt, as follows: "Dock Eastep. One gal., $2.00. Paid. W. L. H." When the defendant gave the receipt he said: "If the whiskey don't come, come back up here and I will make it good. Sometimes it gets misplaced." He further said that the witness would get the whiskey the next morning at the express office, as it would be there by that time. The witness went to the express office in Lexington the next morning and got the one gallon of whiskey. The defendant, when he sold the whiskey, told the witness that it was then in Danville, Va., and was old man Alex Bailey's whiskey, and that witness knew what it was. He also said that he was agent of Bailey or Bailey Company in Danville; that he would (633) send the order to Danville and, if the order was accepted, the liquor would be sent direct to the witness at Lexington, and that if it did not come "he would make it good or (the witness) would get his money back." The defendant did not go with him to the express office to get the whiskey; it came in the name of the witness and was delivered to him by the express agent at Lexington. It was tagged, and on the tag was written "Dock Eastep, Lexington, N.C." The witness is called Dock Eastep, and may have given that name to the defendant when the liquor was ordered. There was nothing said about the defendant selling the witness any whiskey, but he told him that he was the agent for another concern, and that he would send the order in to them as agent. The tag was on the jug when the witness got it at the *Page 470 
express office. D. E. Hepler testified that the defendant told him he represented Alex Bailey, and that the liquor concern was located in Danville, Va., and he was its representative. The card on his office door reads: "Bailey Distilling Company, Danville, Va."
Upon the special verdict the Court was of the opinion that the defendant was guilty, and the jury so found. From the judgment upon the verdict, the defendant appealed.
A special verdict must include all the essential elements of the offense charged, or there can be no conviction, and it follows that if the findings are not responsive to the allegations of the indictment they will not sustain a judgment. The jury must find the facts, and not merely state the evidence which may tend to prove them. There can be no aider of the verdict by intendment, or reference to extrinsic facts appearing in the record, and (634) this is so even though the circumstances stated may be sufficient to warrant an inference or presumption of the existence of the constituent facts not distinctly found. Clementson on Special Verdicts, 291, et seq.
It is said by Ruffin, C. J., for the Court, in S. v. Watts, 32 N.C. 369: "It is common learning that a verdict is defective which finds only the evidence; since the Court cannot draw inferences of fact, but only apply the law to facts agreed or found. To authorize judgment for the State, therefore, on the verdict, it ought to have contained direct findings of the necessary facts." Hawkins Pleas of the Crown, bk. 2, ch. 47, sec. 9, states the rule to be that the Court in adjudging upon a special verdict is confined to the facts expressly found, and cannot supply the want thereof, as to any material part, by any argument or implication from what is expressly found. It was accordingly adjudged in Rex v.Plummer, Kel., 111, and other cases he cites, that where the jury failed to find an essential fact, the Court could not take it as established from the other evidential circumstances of the fact which were expressly found, though they were as full to the purpose as they could well be that the omitted fact existed. So in S. v. Blue, 84 N.C. 807, it is said: "In judging upon a special verdict the Court is confined to the facts expressly found, and cannot supply the want thereof, as to any material part, by an argument or implication from what is expressly found. And when the facts are of an equivocal character, which may mean one thing or another, the Court cannot determine as a question of law the *Page 471 
guilt or innocence of the defendant. A special verdict is in itself a verdict of guilty or not guilty as the facts found in it do or do not constitute in law the offense charged. There is nothing to do but to write a judgment thereon for or against the accused. Therefore, in finding a special verdict the facts should be stated fully and explicitly, (635) and the omission of any fact necessary to constitute the offense is fatal," citing 2 Hawkins P. C., 622. The authorities are all to the effect that the jury must state the essential facts, and not leave it to the Court to supply them or any of them or to draw inferences from evidence set forth in the verdict, which must contain the ultimate facts that constitute the offense, and not those merely which may tend, though never so strongly, to show the defendant's guilt. S. v. Curtis, 71 N.C. 56; S.v. Lowry, 74 N.C. 121; S. v. Bray, 89 N.C. 480; S. v. Oakley, 103 N.C. 408;S. v. Crump, 104 N.C. 763; S. v. Finlayson, 113 N.C. 628. InS. v. Custer, 65 N.C. 339, Justice Rodman tersely states the principle: "In (passing upon) a special verdict, we are not at liberty to infer anything not directly found."
The jury in this case have stated in their verdict certain facts and circumstances, related by the defendant to the witness, which may tend or not to establish his guilt. But after all, they are but evidence and not the facts themselves upon which the law can adjudge guilt or innocence. The facts recited tend just as much to show that the liquor was sold, in good faith, to be shipped from Danville, as they do to prove that the defendant's method of selling was a subterfuge and a mere cover by which to conceal a violation of the law, or to evade its provisions, in order to escape its penalty, and certainly it tends to prove the former fact just as fully as it does the one that the defendant sold the liquor in Lexington, by himself delivering the jug at the express office for the defendant, who was to call and get it. What the defendant said to the witness, James Eastep, was mere evidence, and not the facts themselves, which the jury should have found before the Court could proceed to judgment. This is the fatal defect in the verdict. We would assume a jurisdiction not possessed by us and be guessing at the true and crucial fact of guilt, if we should direct a conviction (636) upon the present verdict. There is hardly sufficient evidence stated from which to infer that the defendant placed the whiskey in the express office, or had it done, instead of having it shipped from Danville, Va., unless we are permitted, as we are not, to substitute mere conjecture for that certain and reliable proof of a fact which the law requires to establish it.
As said by Shepherd, C. J., in S. v. Finlayson, 113 N.C. 628: "Evidently a very important question concerning interstate commerce was intended to be presented, but we cannot consider it upon this verdict." *Page 472 
Judging from the nature of the findings, the course of the argument here and the briefs of counsel, it was supposed below, we could infer, that the verdict was equivalent to a finding that the whiskey was actually and in good faith sold for shipment from Danville, Va., and the question was whether the transaction was so far interstate traffic as to protect the defendant from prosecution under our law against the unlawful sale of liquors, and also whether the act of Congress, sometimes called the Wilson Act, applied to the case. But this matter we cannot consider, as it is not at all presented in the record, owing to the imperfection of the verdict in the respect we have indicated.
Where a special verdict is so defective that the Court cannot pronounce judgment upon it, the rule is to order a new trial. S. v. Wallace,25 N.C. 195; S. v. Curtis, 71 N.C. 56; S. v. Blue, 84 N.C. 809;S. v. Brittain, 89 N.C. 481. "If the verdict does not sufficiently ascertain the fact, a venire facias de novo ought to issue." 2 Hawkins P. C., p. 622, and note 2. It is of course within the power of the trial Court to direct the jury to retire and further deliberate for the purpose of remedying any defects in the verdict. Clementson Special Verdicts, (637) p. 293; S. v. Arthur, 21 Iowa 322.
Our conclusion is that there has been no sufficient verdict rendered for the Court to determine, as matter of law, the guilt or innocence of the defendant, and the case stands, therefore, as if there had been a mistrial.S. v. Curtis, supra. It follows that there was error in entering judgment as upon a conviction, for which there must be another trial.
New Trial.